[Cite as *State v. Gettings*, 2017-Ohio-7764.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 16 MA 0050 |
| VS. | ) | |
| | ) | OPINION |
| LEON GETTINGS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 2012 CR 743

JUDGMENT:      Affirmed.

APPEARANCES:
For Plaintiff-Appellee      Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant      Attorney Carlo Ciccone
1456 White Oak Drive NE
Warren, Ohio 44841-1650

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: September 21, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, Leon Gettings, appeals his convictions for rape. Gettings challenges the sufficiency and manifest weight of the evidence, contends trial counsel was ineffective and finally challenges the trial court's rulings regarding his motion to suppress. As his arguments are meritless, the judgment of the trial court is affirmed.

{¶2} On August 2, 2012, Gettings was indicted for three counts of rape, all in violation of R.C. 2907.02 (A)(1)(c)(B) and first degree felonies. Each count alleged that on or between August 24, 2011, and June 10, 2012, Gettings engaged in sexual conduct with T.W. whose ability to resist or consent was substantially impaired because of a mental or physical condition. She was in eighth grade at the time of the offenses but comprehended at a third grade level. On May 21, 2013, Gettings entered a plea of guilty to the indictment.

{¶3} There were multiple pre-trial filings and procedural delays. Pertinent to this appeal, Gettings replaced his original attorney and ultimately was granted a motion to withdraw his plea. Counsel filed, and then withdrew, two motions to suppress, one in 2014 and a second in 2015, as well as a motion to dismiss. Five days before an August 2015 trial, co-counsel entered an appearance and filed a motion for leave to file a motion to suppress and other pre-trial motions, which the trial court denied as untimely. Gettings filed a motion to waive jury trial and on the day of trial the judge recused herself and asked the administrative judge to reassign the case.

{¶4} After a new judge was assigned, Gettings once again executed a waiver of jury trial. In addition to a third motion to suppress, Gettings filed a second motion to dismiss contending the indictment was too vague. The State opposed these motions arguing that Gettings' motions were untimely.

{¶5} A bench trial was held on February 29 & March 1, 2016. The State presented the testimony of eleven witnesses including the victim. The defense's sole witness was Gettings. He was found guilty and sentenced to ten years on each of the three counts to run concurrently. He was designated a Tier III sex offender.

**Sufficiency & Manifest Weight**

**{¶6}** Gettings' first of three assignments of error asserts:

The Trial Court violated Appellant's rights to due process and a fair trial when it entered judgment of conviction based on insufficient evidence and against the manifest weight of the evidence and, as a result, the U.S. Constitution and the Ohio Constitution require the conviction to be reversed with prejudice to further prosecution.

**{¶7}** "A challenge to the sufficiency of the evidence tests whether the state has properly discharged its burden to produce competent, probative, evidence on each element of the offense charged." *State v. Petefish*, 7th Dist. No. 10 MA 78, 2011–Ohio–6367, ¶ 16. Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* "In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668.

**{¶8}** "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶9}** Thus, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts

in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 387. However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002–Ohio–1152, *2, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Under these circumstances, the verdict is not against the manifest weight and should be affirmed. *State v. Smith*, 2016–Ohio–3418, 66 N.E.3d 279, ¶ 49 (7th Dist.).

**{¶10}** With regard to the rape conviction, R.C. 2907.02(A)(1)(c) the State was required to prove five elements: 1) that Gettings engaged in sexual conduct; 2) with another, not his spouse; 3) substantial impairment of the other's ability to resist or consent; 4) due to a mental condition; and 5) Gettings knew or had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired due to a mental condition. *State v. Hillock*, 7th Dist. No. 02-538-CA, 2002–Ohio–6897, ¶ 15.

**{¶11}** Gettings was indicted with three counts of rape in violation of R.C. 2907.02(A)(1)(c) occurring between August 24, 2011 and June 10, 2012. The first count of the indictment involved the events of June 10, 2012. The two remaining counts are based upon a course of conduct that occurred on at least two occasions during the time frame listed in the indictment.

**{¶12}** The June 10, 2012 count of rape is supported by sufficient evidence and is not against the manifest weight of the evidence. Gettings does not contest any element other than sexual conduct with the victim. However, Gettings made a written statement to police admitting he kissed the victim on her stomach and the top of her vagina. The victim testified that on that date the police were called because Gettings "was messing" with her. Specifically, that he put her on his bed, pulled down her pants and put his tongue on her vagina. The victim's mother, M.W., walked in the bedroom while this was occurring. M.W. testified that she "walked into what I saw

Leon having oral sex with my daughter." He verbally admitted to performing oral sex on the victim to the law enforcement. Further, Gettings' DNA profile was found on the victim's underwear.

**{¶13}** We next consider whether the two remaining counts are supported by sufficient evidence and are not against the manifest weight of the evidence. In addition to the June 10th incident the victim testified that Gettings performed cunnilingus on her on the couch in the living room. The other pertinent testimony is from the two nurses who treated the victim. The first nurse examined the victim when she arrived at the emergency room and stated that Gettings "put his penis in her." A nurse practitioner, who worked at the Child Advocacy Center, testified that the victim disclosed that Gettings had rubbed his penis in her face, ejaculated on her, digitally penetrated her, placed his tongue in her anus and put his penis in her anus and her vagina. The CAC nurse stated that the victim's knowledge about sexuality was advanced for her developmental level.

**{¶14}** Considering this testimony from these witnesses, there was sufficient evidence of two counts of rape. Further, the convictions are not against the manifest weight of the evidence. Thus, this assignment of error is meritless.

### Ineffective Assistance of Counsel

**{¶15}** In his second of three assignments of error, Gettings asserts:

Appellant was deprived of the effective assistance of trial counsel in violation of appellant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article 1 of the Ohio Constitution.

**{¶16}** To prove an allegation of ineffective assistance of counsel, the defendant must satisfy a two-prong test; that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E .2d 373 (1989),

at paragraph two of the syllabus. To demonstrate prejudice, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Id.* at paragraph three of the syllabus. In Ohio, a properly licensed attorney is presumed to be competent and the burden is on the defendant to prove otherwise. *State v. Hamblin*, 37 Ohio St.3d 153, 155, 524 N.E.2d 476 (1988).

**{¶17}** Gettings argues that his trial counsel rendered ineffective assistance in five ways: inadequate direct examination; failing to subpoena witnesses; stipulating to DNA evidence; filing motions to suppress and withdrawing them; and waiving his jury trial. Each will be discussed in turn.

### Direct Examination

**{¶18}** Advice provided by a criminal defense attorney to the client regarding the decision to testify is a tactical decision that cannot be challenged as evidence of ineffective assistance of counsel. *State v. Winchester*, 8th Dist. No.79739, 2002-Ohio-2130, ¶ 12 (internal citations omitted). However, a claim for ineffective assistance may be successful if the defendant's decision to testify was the result of coercion. *Id.* Gettings seems to argue that he should not have testified as it was not required. However, he does not argue coercion. As such, this remains a tactical decision of trial counsel.

**{¶19}** Gettings further contends that his trial counsel was unprepared and conducted an inadequate direct examination of him. Gettings' attorney on appeal selectively picks portions of the transcript to support this contention. As a result, the arguments are made out of context. A review of the full record demonstrates that Gettings' complaints fall within the realm of trial strategy.

**{¶20}** Appellate counsel also takes issue with the fact that trial counsel twice asked Gettings whether he was satisfied with her representation. Both times trial counsel was met with an objection from the State. The trial judge admonished trial counsel the second time. While unorthodox, appellate counsel provides no law that this line of questioning establishes deficient performance.

### Failing to Subpoena Witnesses & DNA Evidence

**{¶21}** "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of a showing that testimony of any one or more of the witnesses would have assisted the defense." *Middleton v. Allen*, 63 Ohio App.3d 443, 448, 579 N.E.2d 254 (12th Dist.1989) (internal citations omitted). The failure to subpoena witnesses is not prejudicial if the testimony of those witnesses simply would have been corroborative. *Id.*

**{¶22}** Gettings argues that trial counsel was ineffective because she did not subpoena the victim's mother. M.W. was the first witness called by the State and cross-examined by defense counsel. At the end of the first day of trial, defense counsel wanted to recall her because "there were statements that were made today that I feel that I need to present rebuttal on." Counsel ultimately did not subpoena Wallace or recall her. Gettings fails to explain how this testimony would have assisted the defense or if it would be more than just corroborative or repetitive.

**{¶23}** Gettings argues that his trial counsel was deficient for stipulating to DNA evidence. This argument is moot as the trial court refused to accept a stipulation.

**Withdrawing Motion to Suppress**

**{¶24}** "[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–448, 721 N.E.2d 52, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Consequently, "the decision to withdraw a motion to suppress does not constitute per se ineffective assistance of counsel." *State v. Dominguez,* 12th Dist. No. CA2011–09–010, 2012–Ohio–4542, ¶ 20. Gettings must show that the motion would have had a reasonable probability of success. See *State v. Nields*, 93 Ohio St.3d 6, 34, 2001–Ohio–1291, 752 N.E.2d 859. Gettings argues that his trial counsel was ineffective for withdrawing motions to suppress that had been previously filed but does not argue or demonstrate that the motions would have had a reasonable probability of success.

**Waiving Jury Trial**

**{¶25}** Gettings acknowledges that waiving a jury trial is within the ambit of trial strategy, however, he argues "coupled with the myriad of other factors involved, question arises as to whether the decision was strategic." However, we have determined that the other allegations of ineffective assistance of counsel are meritless. Further, Gettings waived his right to a jury trial in open court. A written jury trial waiver is presumptively voluntary, knowing, and intelligent. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 49. Gettings does not argue that his waiver was not knowing, voluntary and intelligently made.

**{¶26}** In sum, Gettings has not established deficient performance of his trial counsel that rises to the level of ineffective assistance. Thus, his second assignment of error is meritless.

### Plain Error

**{¶27}** In his third of three assignments of error, Gettings asserts:

The Trial Court committed plain error by refusing to hear Appellant's motion to suppress because it was under the erroneous belief that it had been untimely filed.

**{¶28}** The record reflects the following regarding this assignment of error:

**THE COURT**: Before I get to counsel to see if there is anything they want to put on the record, I want to clarify a few things on the record. On January 6 there was some motions that were filed by the defense. Those motions consisted of a motion to dismiss, a motion in limine, request for the court to consider lesser included offenses, and a motion to suppress. We had a phone conference as a result of those motions and at that time the state audibly indicated their objection to all four of those motions as being untimely filed. The court then conducted discussions with counsel on behalf of the defendant and was advised that they were going to withdraw all of those motions except for the

request that the court consider lesser included offenses. Counsel, is that correct?

**DEFENSE COUNSEL**: That's correct.

**THE COURT**: Okay. So I want the record to be clear that with reference to the motion to dismiss, the court is going to deny that motion whether it had been withdrawn or not. The motion in limine I am going to deny because all of the objections or the issues that are raised are the issues that I would expect to be raised at the time that the testimony was offered during the trial. With reference for the request for the court to consider lesser included offenses, I think we are all in agreement that that's an obligation I have to do, and I think the state concurred with that at the time when we had our phone conference; is that correct? Prosecutor, you were in agreement that there is no question I have to consider lesser included offenses? It doesn't need to be a motion to do that?

**PROSECUTOR**: Yes, we do agree with that.

**THE COURT**: I am obligated by law and with reference to the motion to suppress, just so the record is clear and this is all part of what we conducted in our conversation in the phone call where we discussed these things, it was discussed, and I believe Mr. Johnson indicated that the motion that had been filed on January 6 was the same motion that had been filed on October 23, 2014, and on June 8, 2015. Both of those motions have been withdrawn, and the only issue that was different in the new motion that had been filed on January 6, 2016, is there was dialogue and discussion indicating that the defendant was unaware and unable to appreciate his constitutional right because of his use of Spice and some other prescribed medications or other medications that he had been taking. Once again, that motion has been withdrawn at this time, and we will not make any ruling on that. There

also was some discussion at that time, and is contained in the motion, that there was no audio or video recording of Mr. Gettings' statement. The prosecution indicated that there was, in fact, recorded testimony and that that had been provided to the defense. And my understanding is that has also been provided. Again so that they are aware and they have in their possession the recordings that I anticipate may be offered by the state in this case. Inasmuch as the motions have been withdrawn, in particular the motion to suppress has been withdrawn, it's now a moot point. It doesn't need to be ruled on by the court, even though it needs to be pointed out that it was filed untimely. The motions had to be filed by the last day of the year, is my recollection was, and that was not accomplished. Having discussed those, I am unaware of any other outstanding matters that are contained in the court file, and I will turn to the attorneys to see whether there is any issues that they wish to put on the record.

{¶29} Gettings' trial counsel never made any argument regarding the trial court's conclusion that the motion was untimely. "An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986). That said, Crim.R. 52(B) gives appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights." [T]he accused bears the burden of proof to demonstrate plain error within the record and to establish this must show a deviation from a legal rule that constitutes an 'obvious' defect in the trial proceedings. *State v. Rogers*, 143 Ohio St.3d 385, 2105-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶30} Gettings has not established plain error. The record does not demonstrate that the trial court refused to hear Gettings' motion to suppress because

it was untimely. The trial court indicated there had been a telephone conference and the motion to suppress was discussed in the context of the previously filed motions and the evidence the State had in its possession. At that point trial counsel for Gettings withdrew the motion to suppress.

{¶31} As the trial court never refused to hear Gettings' motion to suppress, his third assignment of error is meritless.

{¶32} In conclusion, Gettings' arguments are meritless as his convictions for rape were supported by the evidence and are not against the manifest weight of the evidence. Further, he has not demonstrated that trial counsel was constitutionally ineffective, and there was no plain error regarding the motions to suppress. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P. J., concurs.