[Cite as *Cleveland v. Stansell*, 2026-Ohio-2084.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | No. 115617 |
| v. | : | |
| SCOTT STANSELL, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND VACATED
**RELEASED AND JOURNALIZED:** June 4, 2026

Criminal Appeal from the Cleveland Municipal Court
Case Nos. 2025-CRB-008869 and 2025-CRB-008871

## *Appearances:*

Mark D. Griffin, Cleveland Director of Law, Aqueelah Jordan, Chief Prosecuting Attorney, and Isaiah Pinckney III, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Scott Stansell ("Stansell") appeals from the trial court's judgment entries finding him in contempt of court for two separate offenses,

in violation of R.C. 2705.02, and sentencing him to 30 days in jail for both offenses, with those sentences running consecutively to one another.  After a thorough review of the record, we vacate the trial court's contempt findings since Stansell was convicted of indirect contempt without first being afforded reasonable notice prior to the mandatory hearing  required pursuant to R.C. 2705.03.

## I. Procedural History and Relevant Facts

### A.  Background

{¶ 2}   In September 2025, Stansell was serving a term of community-control sanctions ("CCS") with the Cleveland Municipal Court in Case No. 2024-CRB-00994, following conviction for an attempted violation of a protection order.  A CCS violation hearing was held on September 18, 2025.  Stansell was not represented by counsel.

{¶ 3}   At the hearing, the trial court ordered Stansell to serve five days in jail.  He protested, telling the trial judge multiple times:  "No, I want to do the 90 days," and "I'm doing the 90 days or I'm not doing anything at all."  The trial judge warned him that he would be held in contempt.  Stansell continued arguing:  "You can give me the 90 days, I'm not doing five days," and "I'm doing the 90 days."

{¶ 4}   The trial court held Stansell in contempt and imposed a 30-day jail sentence consecutive to the five-day sentence already imposed, for a total of 35 days.  Stansell responded to the court's ruling, "When I see you, I'll have 90 days."  Again the court reiterated the 35-day jail sentence, dismissing Stansell with a "goodbye."  Stansell again responded, "And then we'll have 90 days too" and then called the trial

judge a "f****** b****."  The judge imposed an additional 30-day jail sentence to which Stansell responded, "F*** this.  This is b*******."

{¶ 5}  The two findings of contempt were journalized on September 22, 2025, in two separate complaints charging Stansell with indirect contempt in violation of R.C. 2705.02, in Cleveland M.C. Nos. 2025-CRB-008869 and 2025-CRB-008871.[1]  The court's judgment entries indicate that a hearing was held the same day the charges were filed and that, at the hearing, Stansell pleaded not guilty to the charges, but was eventually found guilty of contempt and sentenced to 30 days in jail for both offenses, to run consecutively to one another.[2]  The entries also note that the court issued a $50.00 fine in Case No. 2025-CRB-008871, which was suspended.

**B. Appeal**

{¶ 6}  On September 25, 2025, Stansell filed a notice of appeal from the trial court's contempt orders issued in Case Nos. 2025-CRB-008869 and 2025-CRB-008871.  He raises the following three assignments of error for our review:

1. The trial court violated Mr. Stansell's right to assistance of counsel.

2. The trial court abused its discretion when it found Mr. Stansell guilty of direct criminal contempt in a summary proceeding.

---

[1] Neither the complaints nor the affidavits establishing probable cause were file stamped.

[2] While the trial court's judgment entries indicate that a hearing was held on September 22, 2025, there is no transcript or audio recording of the hearing in the record. In his brief, Stansell alleges no hearing was held and in an affidavit signed on October 27, 2025, a court reporter for the Cleveland Municipal court averred that he was unable to complete the transcript "because proceedings were not recorded."

3. The trial court erred by sentencing Mr. Stansell to two consecutive sentences of thirty days' incarceration. Convicting Mr. Stansell twice for the same conduct violates the double jeopardy clause, and neither sentence is commensurate with the alleged violation.

{¶ 7} After briefing concluded, we directed the parties "to brief the issue of whether the appeal is moot" because Stansell had completed his jail sentence. We noted:

> [Stansell] was sentenced to an aggregate sentence of incarceration, a total of sixty-five days, on September 18, 2025. [Stansell] has served the entirety of the aggregate sentence on November 22, 2025, before [his] brief was filed. Does the fact, that [Stansell] has served the aggregate sentence imposed in Cleveland M.C. No. 2025-CRB-008869 and Cleveland M.C. No. 2025-CRB-00887[1], render his appeal moot?

## II. Mootness

{¶ 8} Before we review the merits of Stansell's arguments, we must first determine whether his appeal has been rendered moot since he has served the entirety of the sentence imposed by the trial court.

### A. Applicable Law

{¶ 9} "The role of courts is to decide adversarial cases and to issue judgments that can be carried into effect." *Cyran v. Cyran,* 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas,* 22 Ohio St.2d 13, 14 (1970). In the American judicial system, "courts will not decide cases in which there is no longer an actual legal controversy between the parties." *Id.,* citing *In re A.G.,* 2014-Ohio-2597, ¶ 37. Thus, an issue

becomes moot when the parties to a matter "'lack a legally cognizable interest in the outcome . . . .'" *Id.,* quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969).

{¶ 10} We have held that "[w]hen a defendant voluntarily serves a misdemeanor sentence, 'a criminal appeal is generally considered moot because any decision rendered by the appellate court cannot undo the sentence served, even if the conviction is found to be invalid.'" *State v. Landers,* 2025-Ohio-5143, ¶ 7 (8th Dist.), quoting *State v. Lewis,* 2013-Ohio-1187, ¶ 2 (8th Dist.). This is also true when a defendant has been found in contempt. *See In re N.Q.,* 2024-Ohio-1296, ¶ 10 (2d Dist.) ("An appeal regarding a contempt sentence is moot after the jail term has been served unless the contemnor can demonstrate that he or she will suffer a collateral disability or loss of civil rights based on the finding of contempt."), citing *Harris v. Omosule,* 2010-Ohio-1124, ¶ 6 (2d Dist.).

{¶ 11} Even if the defendant has voluntarily served the entirety of his or her sentence, the appeal is not moot if "the defendant can demonstrate a collateral disability or deprivation of civil rights that extends beyond the served sentence." *Landers* at ¶ 7. "'"A collateral disability is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served."'" *Id.,* quoting *State v. Pizzo,* 2025-Ohio-2790, ¶ 10 (2d Dist.), quoting *In re S.J.K.,* 2007-Ohio-2621, ¶ 10.

## B. Analysis

{¶ 12} Stansell first argues that he did not *voluntarily* acquiesce to his sentence and, therefore, the instant appeal is not moot. The Ohio Supreme Court

has held that the completion of a sentence is not voluntary and will not moot an appeal "if the circumstances surrounding it demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide." *Cleveland Hts. v. Lewis*, 2011-Ohio-2673, ¶ 26. The Court explained that

> a misdemeanant who contests charges at trial and, after being convicted, seeks a stay of execution of sentence from the trial court for the purpose of preventing an intended appeal from being declared moot and thereafter appeals the conviction objectively demonstrates that the sentence is not being served voluntarily, because no intent is shown to acquiesce in the judgment or to intentionally abandon the right of appeal.

*Id.* at ¶ 23. The Court reasoned that "[t]hese circumstances also demonstrate that the appellant has 'a substantial stake in the judgment of conviction.'" *Id.,* quoting *State v. Wilson,* 41 Ohio St.2d 236, 237 (1975).

{¶ 13} Here, following the imposition of the trial court's sentence, Stansell appealed from the trial court's contempt judgments in both contempt cases, 2025-CRB-008869 and 2025-CRB-008871. And notwithstanding his claims to the trial judge that he intended to serve 90 days in jail on his unrelated probation case, he also filed a motion for a stay of execution of the sentence imposed in both contempt cases. As such, Stansell has demonstrated that he did not serve his contempt sentence voluntarily "because no intent [was] shown to acquiesce in the judgment or to intentionally abandon [his] right of appeal." *Lewis* at ¶ 23. As the Ohio

Supreme Court has explained, these circumstances "demonstrate the appellant has 'a substantial stake in the judgment of conviction.'" *Id.,* quoting *Wilson* at 237.

{¶ 14} With respect to whether Stansell has demonstrated a collateral disability, *Lewis* is instructive. In finding that the defendant had demonstrated a collateral disability, the court noted that the defendant's "sole assignment of error related to the court's finding of guilt, and the appellate court could have provided redress of his claim that he had been wrongfully convicted, notwithstanding the completion of the sentence." *Lewis* at ¶ 24.

{¶ 15} Here, Stansell's assignments of error relate to the court's contempt findings in one aspect or another. As such, we can consider Stansell's claims concerning whether he was wrongfully convicted of contempt.

{¶ 16} For these reasons, Stansell's appeal is not moot because he did not voluntarily acquiesce to the court's sentence and there remains subject matter for court to decide. *See Lewis,* 2011-Ohio-2673, at ¶ 25.

## III. Assignments of Error

{¶ 17} Stansell presents three assignments of error for our review. Since our disposition of the second assignment of error is dispositive of the entire appeal, we will address the second assignment of error first.

### A. Second Assigned Error for Review

{¶ 18} In his second assigned error for review, Stansell alleges that the trial court abused its discretion when finding him in contempt.

{¶ 19} A judge has the inherent power "to punish the disobedience of the court's orders with contempt proceedings." *Zakany v. Zakany,* 9 Ohio St.3d 192, 194 (1984). "Contempt can be either direct or indirect." *M.A.B. v. B.R.L.,* 2024-Ohio-573, ¶ 14 (8th Dist.), citing *In re J.M.,* 2008-Ohio-6763, ¶ 46 (12th Dist.). "Direct contempt occurs when a person misbehaves 'in the presence of or so near the court or judge as to obstruct the administration of justice.'" *In re Contempt of Wallace,* 2024-Ohio-966, ¶ 8 (8th Dist.), quoting *In re Gonzalez,* 2003-Ohio-1960, ¶ 11 (8th Dist.). This authority has been codified in R.C. 2705.01, which provides that "[a] court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

{¶ 20} On the other hand, "[i]ndirect contempt involves acts occurring outside the presence of the court that demonstrate a lack of respect for the court or its lawful orders." *M.A.B.* at ¶ 14. Pursuant to R.C. 2705.02(A), "'[a] person guilty of . . . [d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court officer'" may be found in contempt of court. *Cleveland v. Bright,* 2020-Ohio-5180, ¶ 32 (8th Dist.), quoting *State v. Local Union 5760, United Steelworkers of Am.,* 172 Ohio St. 75, 79 (1961). "A violation of R.C. 2705.02 . . . is generally referred to as indirect contempt." *Id.*

{¶ 21} Here, Stansell's actions occurred before the court. However, rather than finding him in direct contempt, the trial court's judgment entries indicate that

Stansell was convicted of contempt in violation of R.C. 2705.02, indirect contempt. R.C. 2705.03 provides:

> In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings.

{¶ 22} The Supreme Court of Ohio has stated that "the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to." *State ex rel. Seventh Urban, Inc. v. McFaul,* 5 Ohio St.3d 120, 122 (1983). We have held that the "failure to file written charges of indirect contempt as required by R.C. 2705.03 constitutes reversible error." *Cleveland v. Patterson,* 1981 Ohio App. LEXIS 14023, *6 (8th Dist. Feb. 5, 1981). *Accord Akron v. Alvarez*, 2023-Ohio-4770, ¶ 13 (9th Dist.) (holding that "the failure to provide a defendant with the requisite written notice constitutes reversible error").

{¶ 23} There is nothing in the record that Stansell was provided written notice of the contempt charges against him prior to the hearing on the indirect contempt charges. Rather, the record indicates that the complaints were filed on the same day of the hearing, September 22, 2025, according to the court docket. And even if we were to assume that Stansell was provided notice of the September 22, 2025 hearing that same day, "a party must be given reasonable notice that is sufficient to allow that party to prepare a defense and then must be provided

a meaningful opportunity to be heard before an order requires payment and simultaneously prohibits the exercise of a legal right." *Chiro v. Foley,* 2014-Ohio-3728, ¶ 16 (8th Dist.), citing *Cleveland Bd. of Edn. v. Loudermill,* 470 U.S. 532, 542 (1985). We find that providing notice to an alleged contemnor on the same day of the hearing is not reasonable and violated Stansell's due-process rights.

{¶ 24} Since the trial court convicted Stansell of indirect contempt in violation of R.C. 2705.02, it did so without affording him due-process procedures set forth and required by R.C. 2705.03. For these reasons, the trial court's contempt findings are reversed.

### B. First and Third Assigned Error for Review

{¶ 25} Our decision with respect to Stansell's second assignment of error vacating the trial court's second contempt finding renders Stansell's first and third assignments of error moot. As such, we decline to address them. *See* App.R. 12(A)(1)(c).

{¶ 26} For these reasons, we reverse the trial court's contempt findings and vacate Stansell's contempt convictions.

{¶ 27} Judgment reversed, and convictions vacated.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING:

{¶ 28} I agree that the appeal before us is not moot, and given the unique facts in this instance, I concur with the majority's analysis and decision to reverse the contempt findings and vacate the contempt convictions in this case. This panel was presented with a Catch 22-scenario: should we review this as a matter of indirect contempt based on the indirect contempt found by the trial court in its judgment entries or as a matter involving direct contempt based on the facts presented? Because the outcome is the same for me under either analysis, I concur.

{¶ 29} The majority properly sets forth the distinction between direct contempt and indirect contempt and recognizes that Stansell's actions occurred before the trial court, yet the trial court's subsequent judgment entries indicate that Stansell was charged with and found in indirect contempt under R.C. 2705.02. As argued by Stansell, "R.C. 2705.02, the indirect contempt statute, was written on the charging paper, while the finding was of direct contempt." Likewise, the City concedes that the trial court held Stansell in contempt for interrupting the trial court during the community-control violation hearing and again for disrespecting the

court a second time with profane language "[w]hile still in the presence of the trial court."  Nonetheless, the trial court proceeded to charge Stansell with and find him guilty of indirect contempt in its judgment entries.

{¶ 30} I agree with the majority's analysis and its determination that the trial court erred and violated Stansell's due process rights when it convicted Stansell of indirect contempt in violation of R.C. 2705.02.  I further believe that insofar as the matter has been argued as a matter involving direct contempt, Stansell's conduct did not amount to direct contempt.

{¶ 31} "The statutory authority to summarily punish contemptuous behavior is predicated on misbehavior that 'obstruct[s] the administration of justice.'" *State v. McClanahan*, 2024-Ohio-1288, ¶ 9, quoting R.C. 2705.01; *see also Ward v. Ross (In re Ruehlman)*, 2024-Ohio-1306, ¶ 35.  As the Supreme Court of Ohio has cautioned, "'[t]rial courts * * * must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.'" *Disciplinary Counsel v. Bachman*, 2020-Ohio-6732, ¶ 24, quoting *Brown v. United States*, 356 U.S. 148, 153 (1958).

{¶ 32} Undoubtedly, Stansell's conduct was deserving of a reprimand by the trial court.  However, telling the judge to "just give me the 90 days" does not rise to the level of direct criminal contempt.  Defendants express dissatisfaction with sentences in many forms during hearings.  It is an adversarial process.  Even the inappropriate language commenting on the proceedings by this defendant is questionable as a form of direct contempt.  Indeed, the vehemence of the language

alone is not a measure for whether actions constitute direct contempt. *See State v. Drake*, 73 Ohio App.3d 640, 643 (8th Dist. 1991). When a judicial officer feels personally affronted or disrespected, "[t]here are other, less severe, ways of handling disruptive courthouse conduct, ranging from a momentary pause . . . to ordering someone's departure from the courtroom or the courthouse." *Bachman* at ¶ 33.

{¶ 33} In this situation, the judge was in control. A reprimand of Stansell was in order, but playing the contempt card whenever an outburst occurs undermines the court's true power. As *Bachman* shows, judges who use that method can get themselves into trouble very easily if circumstances spin out of control by the overuse of contempt. *See id.* The defendant can have his say, but the court is, and was in this instance, in full control. This was not a case of direct contempt, and certainly, the trial court erred in finding indirect contempt occurred. Upon my review of the second assignment of error, I find that the trial court abused its discretion and erred in finding Stansell in contempt. Accordingly, I would sustain the second assignment of error and would reverse and vacate the trial court's findings of contempt.